IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

FRANCES R. KILLINGSWORTH, )
                                         )
        Plaintiff,      )
                                         )
              v.              )      Case No. CIV-21-114-SPS
                                       )
KILOLO KIJAKAZI,[1]           )
Acting Commissioner of the Social )
Security Administration,      )
                                       )
        Defendant.  )

**OPINION AND ORDER**

The claimant Frances R. Killingsworth requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 35, 65). She was educated through one year of college and has worked as a home attendant, hospital food service worker, and cashier checker (Tr. 27, 143). The claimant alleges that she has been unable to work since her application date of October 19, 2018, due to degenerative bone disease in the lower back and stroke (Tr. 142).

### Procedural History

On October 19, 2018, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Francis Gillet conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 30, 2020 (Tr. 16-29). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she was limited to standing/walking four hours

-3-

in an eight-hour workday, but she could lift/carry ten pounds frequently and twenty pounds occasionally, and sit six hours in an eight-hour workday. Additionally, he found she was limited to frequent reaching; she could only occasionally reach above the shoulder bilaterally, bend, stoop, squat, and push/pull levers with the upper extremities; and she could not "power grip" bilaterally, kneel, crawl, use foot controls, climb ladders/ropes/scaffolds, use air or vibrating tools, or work around moving machinery or fast-paced production work. Finally, the ALJ limited her to simple, routine, and repetitive tasks and simple decision-making, only occasional interaction with co-workers and supervisors, and no interaction with the public (Tr. 21-22). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, mail clerk, office helper, and routing clerk (Tr. 26-28).

**Review**

The claimant contends that her assigned RFC is not supported by substantial evidence because the ALJ failed to properly account for the medical opinions that she was limited to sedentary work. The Court agrees with this contention, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of cervical degenerative disc and joint disease, lumbar degenerative disc and joint disease, uncontrolled hypertension, migraine headaches, and the residual effects of a cardiovascular accident ("CVA"), as well as the nonsevere impairments of hyperlipidemia, mild degenerative changes of the left knee, renal cyst, and history of acute therapeutic treatment

for cognitive impairment including expressive aphasia with right hand/arm weakness which were largely resolved shortly after her CVA (Tr. 18-19). The relevant medical record as to the claimant's impairments reveals that in August 2016, prior to the application date, an MRI of the claimant's cervical spine revealed C5-6 shallow posterior disc bulge without associated canal stenosis or central canal stenosis, but no nerve root impingement (Tr. 232). On July 10, 2017, the claimant presented to Sequoyah Memorial Hospital with right arm hemi-neglect and mutism; she was assessed with a CVA, and then transferred to St. Francis Hospital in Tulsa, Oklahoma until she was discharged on July 14, 2017 (Tr. 233-235, 285-259).

    Treatment notes after the application date reflect that in August 2019 the claimant had a slow gait and walked with hesitation, and that she had normal range of motion of the neck but decreased forward flexion and extension of the back (Tr. 277). On September 6, 2019, the claimant presented for treatment of, *inter alia*, low back pain, right knee pain, and right hip pain, and the exam reflected that the claimant had tenderness to palpation around the left knee joint, but no laxity or instability, as well as decreased range of motion secondary to pain and right hip tenderness in the right hip (Tr. 273-275). She was assessed with, *inter alia*, left knee pain, right hip pain, and lumbar degenerative disc disease (Tr. 274). Notes in October 2019 reflect the claimant was worried she needed a knee replacement, although her x-ray showed only mild degeneration and she was instructed to follow up with pain management. The chief complaint for this visit related to insomnia and dizziness, however, and the "Review of Systems" indicated that the claimant denied muscle pain, joint pain, back pain, or weakness (Tr. 270-271). When the claimant had

presented for reasons other than her chronic back pain, *e. g.*, blood pressure management, headaches, residuals from her stroke, treatment notes likewise reflected normal musculoskeletal findings (Tr. 278-279, 440-446, 461-463). An MRI of the lumbar spine on October 4, 2019 showed conus medullus termination probably, and lipomatous deposition along the course of the filum terminale, no acute compression fracture, no significant spinal canal or neural foraminal stenosis, and questionable cholelithiasis that could represent a cyst (warranting an ultrasound for further evaluation) (Tr. 429-430). An ultrasound of the claimant's right kidney on October 17, 2019 revealed a renal cyst (Tr. 427).

On January 26, 2019, Dr. Kade Hardy, D.O., conducted a physical examination of the claimant (Tr. 263-268). On exam, her nerves and strength were grossly intact, but she had notable tenderness and spasming along the pretibial muscles of her lumbar spine (Tr. 264). While the claimant could follow simple directions and commands, Dr. Hardy noted that the claimant had some problems with memory that day and required the assistance of her daughter (Tr. 264). Additionally, Dr. Hardy noted that the claimant had very limited range of motion, particularly of the lumbar spine and with flexion at the hips, which was accompanied with significant pain, spasming, and tenderness (Tr. 264). The claimant ambulated without assistance but had a mild limping gait favoring her right lower extremity, and she was unable to squat (Tr. 264). In his "Impression," Dr. Hardy noted she had asymmetrical grip strength and again noted her pain, tenderness, and spasming (Tr. 265). He found that the claimant could lift/carry less than ten pounds, that she could sit or stand with normal breaks for less than two hours approximately secondary to her chronic

pain, as well as weakness on the right side that appeared to be chronic and resulting from her stroke/CVA (Tr. 265). He further stated that the claimant's ability to perform and sustain work-related functions such as sitting, standing, walking, lifting, carrying, and handling objects would be significantly limited secondary to comorbidities and chronic pain (Tr. 265).

As to her physical impairments, state reviewing physician Dr. Judee Bland, M.D., found on February 11, 2019 that the claimant could perform a range of sedentary work, *i. e.*, she could lift/carry ten pounds frequently and occasionally, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. Additionally, she found the claimant could only occasionally climb ramps/stairs/ladders/ropes/scaffolds, stoop, kneel, crouch, crouch and crawl, and that she should avoid even moderate exposure to vibrations and hazards (Tr. 73-76).

In his written opinion at step four, the ALJ summarized the claimant's testimony and the medical record. In discussing the opinion evidence as to the claimant's physical impairments, the ALJ noted that objective imaging demonstrated a posterior disc bulge at C5-6 and mild degenerative changes of the lumbar spine, as well as treatment for headaches/migraines, and hypertension that was uncontrolled at times (Tr. 23). He further noted that physical exams at times showed, *inter alia*, tenderness/pain, as well as decreased range of motion, spasm, positive straight leg raise test, and that at other times examination findings were largely normal (Tr. 23). He found that the records did "not support the level of debility alleged by the claimant" and that "objective findings demonstrated somewhat limited abnormalities" (Tr. 25). The ALJ found that Dr. Bland's reviewing physician

opinion was not persuasive because the more acute issues following her 2017 CVA had resolved and more recent findings demonstrated "fewer abnormalities" (Tr. 25). He stated that the decreased extremity strength on the right and positive straight leg raise tests were not "pervasive enough" to find her disabled (Tr. 26). He then found that Dr. Hardy's consultative assessment was not persuasive because this "level of positive limitation" was not demonstrated consistently in the treatment record and he believes Dr. Hardy relied in part on the claimant's reports of severity (Tr. 26). The ALJ then concluded at step five that the claimant was not disabled (Tr. 26-29).

The claimant contends that the ALJ failed to properly evaluate the opinions of Dr. Hardy and Dr. Bland, and the Court agrees. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c),

416.920c(c). Supportability and consistency are the most important factors and the ALJ must specifically explain how both factors were considered, while the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Likewise, the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ asserted that Dr. Hardy's January 2019 opinion was not consistent with her presentation "during active treatment" (Tr. 26). The ALJ did not, however, discuss the repeated records throughout 2019 that *supported* the limitations assigned by Dr. Hardy, nor did he acknowledge that the "largely normal" findings he cited in support were records where the claimant sought treatment for comorbidities such as blood pressure or headaches and treatment notes were focused on those issues rather than assessing her total functional limitations. In the same way, the ALJ appears to conflate his disability finding with his RFC assessment at step four, when he noted that the claimant's claims do not support a finding of disability, rather than discussing the functional limitations arising from her

documented severe impairments (Tr. 25-26). This failure to properly account for the evidence in its entirety had a direct impact on the ALJ's assessment as to the claimant's ability to lift, carry, sit, stand, and walk, *i. e.*, her RFC. This was error. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013). Here, the ALJ has failed to explain how, *inter alia*, the claimant's documented severe impairments including cervical degenerative disc and joint disease and lumbar degenerative disc and joint disease are accounted for in the RFC, particularly with regard to the lift/carry limitations but also as applied to the stand/walk limitation. Having rejected every opinion in the record regarding the claimant's functional limitations, it appears that here the ALJ imposed an RFC that would avoid a finding of disabled, while improperly

rejecting evidence that challenges this conclusion, thus imposing an RFC that is disconnected from the evidence in the record. The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 1st day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**